# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Estate of Ann Boggess, *by its Executor, Thomas Boggess*; Estate of Frank Bolle, *by its Executor, Frank L. Bolle*; Estate of Lena Longo, *by its Executors, Joseph Longo and Peter Longo*; Estate of Saul Offit, *by its Executor, Marc Offit*; Estate of Naomi Pressma, *by its Executor, Conrad Pressma*; Estate of Roberta Silbar, *by its Executors, David Silbar and Steven Silbar*; Estate of Georgia Towers, *by its Executor, Edwin Towers*; and Estate of Anna Zufelt, *by its Executor, Cheryl Howey*, | Civil No.  23-45 (DWF/DJF) |
| | **MEMORANDUM OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| U.S. Bank, N.A., as Securities Intermediary, and Wells Fargo Bank, N.A., as Securities Intermediary, | |
| Defendants. | |

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss for Lack of Article III Standing Pursuant to Federal Rule of Civil Procedure 12(b)(1) brought by Defendants U.S. Bank, N.A., as Securities Intermediary, and Wells Fargo Bank, N.A., as Securities Intermediary (together, "Defendants").  (Doc. No. 57.)  Plaintiffs oppose the motion. (Doc. No. 65.)  For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiffs are the Estates of Ann Boggess, Frank Bolle, Lena Longo, Saul Offit, Naomi Pressma, Roberta Silbar, Georgia Towers, and Anna Zuflet.  Plaintiffs initiated this action on January 6, 2023.  (Doc. No. 1 ("Compl.").)  Plaintiffs seek death benefit proceeds of life insurance policies that insured the lives of the above individual insureds (the "Insureds").  (*Id*.)  This case involves stranger-originated life insurance ("STOLI") policies (collectively, the "Policies" or individually, a "Policy").[1]  (*Id*. ¶ 1.)  The Policies were manufactured in and under Delaware law on the lives of the Insureds.  (*Id*.)  Plaintiffs allege that the Insureds were victims of an illegal scheme organized by a family of related Delaware entities known generally as Coventry.  (*Id*. ¶ 25.)  According to the Complaint, Coventry operated a STOLI program that generated large numbers of multi-million-dollar STOLI policies, including the Policies here.  (*Id*. ¶ 2.)  After the Insureds passed away, the proceeds of the Policies were paid by the life insurers to Defendants, as record owners and beneficiaries of the Policies.  (*Id*. ¶¶ 4, 30.)  Plaintiffs seek to recover

---

[1]     A STOLI policy is created when a stranger (i.e., a group of investors) purchases a life insurance policy from an insured for a lump sum of money, after which the stranger-purchaser pays premiums and becomes the beneficiary.  When an insured who sells their policy dies, the stranger-purchaser receives the death benefit.  Sometimes a STOLI scheme is explained by referring to the insured as the stranger:  "In a [STOLI] scheme, a speculator contrives to purchase a policy on the life of a stranger.  If the stranger dies before the value of the premiums paid by the speculator exceeds the death benefit of the policy, the speculator's bet pays off."  *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 56 (Del. 2022).  With a STOLI policy, there is no connection between the insured and the stranger-purchaser (policy holder).  STOLI policies are illegal in some states because they violate the principle of insurable interest, which requires that there be an insurable interest, or a connection, between the policyholder, the insured, and the beneficiary.

these STOLI proceeds from Defendants[2] because the Policies were allegedly procured "without an insurable interest as wagers on the Insureds' lives." (*Id.* ¶ 86.) Specifically, Plaintiffs allege that the Policies are illegal under Delaware's common law and insurable interest statute, 18 Del. C. § 2704(b).

Defendants move to dismiss this case for lack of subject matter jurisdiction, arguing that Plaintiffs have failed to adequately allege that the Estates or the Insureds suffered concrete harm, or damage of any kind, caused by the Securities Intermediaries. The Court considers the motion below.

## DISCUSSION

### I.   Legal Standard

Defendants move to dismiss this action under Rule 12(b)(1). A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

---

[2]      As Securities Intermediaries, Defendants act for third-party customers who beneficially own assets. Here, Defendants nominally own the life insurance policies at issue on behalf of the third-party customers. Plaintiffs do not allege that Defendants were the owners-in-fact of the Policies. (*See, e.g.*, Compl. ¶¶ 75-76 (Defendants "acted as securities intermediaries and/or as agents in connection with each of the Policies for Coventry, Lavastone, and/or later for other stranger-investor(s)")).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *see also Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia*, Civ. No. 21-2666, 2023 WL 4203035, at *2 (D. Minn. June 27, 2023). Here, Defendants bring a facial challenge. To survive a facial challenge, a complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (internal quotation and citation omitted). The familiar standards of Rule 12(b)(6) apply. *See Fairview Health Servs.*, 2023 WL 4203035, at *2. Namely, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *accord Osborn*, 918 F.2d at 729 n.6. In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.

## II.    Article III Standing

Article III limits the federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff

must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation marks and citation omitted). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (*citing Lujan*, 504 U.S. at 560). Plaintiffs, who are invoking the Court's jurisdiction, bear the burden of establishing standing. *Id*. at 338.

In this case, Plaintiffs allege a single cause of action for "Recovery of Insurance Proceeds Due to Lack of Insurable Interest" based on Delaware's insurable interest statute, 18 Del. C. § 2704(b). Plaintiffs allege that the Insureds were illegally induced into STOLI schemes that took advantage of them and converted their legitimate life insurance products into policies that were illegal wagers on the Insureds' lives. Plaintiffs also allege that Defendants were key players in this scheme because they entered into a series of contracts through which they agreed to serve as Securities Intermediaries for the investors. (Compl. ¶¶ 31-34.) Plaintiffs argue that the Insureds suffered harm by being subjects of wagers and giving strangers an interest in having them dead. (Doc. No. 65 at 6.)

5

Plaintiffs maintain that they have standing, stressing that they are not merely members of the general public and that Defendants are not innocent bystanders.[3] Plaintiffs argue that in *TransUnion*, the Supreme Court recognized that when a plaintiff asserts a private right of action for injuries "traditionally recognized as providing a basis for a lawsuit in American Courts," that plaintiff has Article III standing.  *See TransUnion*, 594 U.S. at 427.  Plaintiffs submit that their alleged injuries arise from insurable interest violations as reflected in their single claim under Delaware's common law and insurable interest statute, 18 Del. C. § 2704(b).  Plaintiffs argue that this body of law is founded on the U.S. Supreme Court's pre-*Erie* federal common law stemming from claims similar to the ones here, wherein the court considered challenges made by insureds' estates against the recipients of proceeds from insurance policies on the insureds' lives.  *See, e.g.*, *Cammack v. Lewis*, 82 U.S. 643, 648-49 (1872) (considering the claims of an insured's estate to recover life insurance proceeds stemming from a policy that lacked an insurable interest); *Warnock v. Davis*, 104 U.S. 775, 782 (1881) (considering a challenge and following decisions that are in "accord with the general policy of the law against speculative contracts upon human life"); *Grigsby v. Russell*,

---

[3]     Plaintiffs argue that the cases that present difficult constitutional standing issues deal with (1) a plaintiffs' assertion of a private claim to rectify a public harm and where the plaintiff is not impacted any more than the general citizenry, *see, e.g.*, *Lujan* at 573-74, or (2) a situation where a plaintiff alleges legal standing based only on a defendant's procedural or technical violation of a newly-created statutory right, *see, e.g.*, *Spokeo*, 578 U.S. at 339.

222 U.S. 149, 154-55 (1911) (considering a challenge and explaining that a policy

lacking insurable interest is a "pure wager").

Plaintiffs contend that these pre-*Erie* decisions are reflected in Delaware common

law and insurable interest statute.  *See, e.g.*, *PHL Variable Ins. Co. v. Price Dawe*,

28 A.3d 1059,1071 (Del. 2021) (determining the intent to codify the common law

insurable interest requirement in § 2704; holding that insurance policies that lack

insurable interest are void; explaining that "[f]or nearly one hundred years, Delaware law

has required an insurable interest as a way to distinguish between insurance and wagering

contracts"); *Lavastone Cap. LLC v. Estate of Berland*, 266 A.3d at 964, 970 (Del. 2021)

(noting that § 2704 reflects an intent "to codify—not abrogate—the common law

insurable interest requirement"); *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d

53, 56 (Del. 2022) ("STOLI policies violate [] the Delaware Constitution, which prohibits

most forms of gambling.  They also offend the longstanding public policy of this State.

Hence, 18 Del. C. § 2704(b) allows the estate of a deceased STOLI insured to 'maintain

an action to recover' the death benefit from its recipient.").  Plaintiffs also point to

numerous federal court cases wherein they claim the courts have recognized that

insureds' estates have standing to pursue claims in federal court to recover the proceeds

of policies lacking insurable interest.  (Doc. No. 65 at 15-17.)

Defendants, on the other hand, argue that Plaintiffs fail to identify any injury in

fact—much less any injury in fact actually caused by the Securities Intermediaries.  (Doc.

No. 59 at 8-9.)  Defendants submit that Plaintiffs' argument above relies on outdated,

distinguishable and inapposite case law, and that Plaintiffs fail to identify any case

addressing standing to pursue their claims under *TransUnion*.  Defendants dispute that there is a long-standing common-law rule permitting *estates* to file insurable interest lawsuits; instead, Defendants submit that the majority rule at common law was that only the *insurer* could raise an insurable interest objection.  *See, e.g.*, 3 Couch on Ins. § 41:5 (2023) ("The majority of courts that have considered the issue of who may question the lack of an insurable interest hold that only the insurer can raise the objection of want of an insurable interest.").  Finally, Defendants argue that even if Plaintiffs could plead a concrete injury, they have failed to allege that Defendants, as Securities Intermediaries, caused those injuries.  In this vein, Defendants point out that the alleged wrongdoers who harmed the estates are the Delaware entities known as Coventry (Compl. ¶¶ 2-3), and that Defendants simply hold the policies in securities accounts on behalf of their customers, who themselves acquired the policies years after Coventry allegedly induced the Insureds into participation.

The Court considers this case under the recent United States Supreme Court decision in *TransUnion*, which articulated the appropriate standard for Article III standing, wherein Plaintiffs must allege both a concrete harm and that the alleged harm was caused by Defendants.  In addition, the Supreme Court in *TransUnion* discussed the requirement that there be a "concrete" harm, explaining that in addition to traditional tangible harms, such as physical or monetary harms, standing is permitted based on claims arising out of an injury or harm that has a close historical or common-law analogue.  594 U.S. at 424-25 (citing *Spokeo*, 578 U.S. at 341).  Under *TransUnion*, even where a statutory cause of action exists, "[o]nly those plaintiffs who have been *concretely*

8

*harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 427 (emphasis in original).

The Court acknowledges that, despite the numerous cases cited and discussed by the parties, there appears to be no case directly on point that addresses the particular facts of this case—whether an estate has Article III standing to bring a state-law claim in a federal STOLI action against a securities intermediary based on lack of insurable interest. Even so, based on the weight of the authority, the Court finds that Plaintiffs have sufficiently alleged facts that demonstrate their standing to bring this case.

First, the Court agrees with Plaintiffs that pre-*Erie* common law recognized a cause of action arising from insurable interest violations. In addition, the case law demonstrates that this common law was codified by the Delaware statute at issue here. *See, e.g.*, *PHL Variable Ins. Co.*, 28 A.3d at 1072-73 ("Although the insurable interest requirement is originally a creature of both state and pre-*Erie* federal common law, it is now codified in the Delaware Insurance Code."); *Lavastone Cap.*, 266 A.3d at 970 (noting an estate's argument that the "common law concept that the proceeds of a STOLI policy are payable to the insured's estate dates back" for many years, and observing that § 2704 reflects and intent to codify common law); *Wells Fargo Bank N.A. v. Est. of Malkin*, 278 A.3d at 61 (citing *Warnock* and explaining that Delaware's insurable interest statute "codifies the longstanding common-law rule that, if the insurer pays the death benefit on a policy that lacks an insurable interest, the estate may sue to receive that benefit").

In addition, numerous federal cases before *TransUnion* allowed an insured's estate to pursue claims in federal court to recover proceeds from policies lacking insurable interest and where the insureds were alleged to have been subject to human life wagers. *See, e.g.*, *Estate of Berland v. Lavastone Cap.*, Civ. No. 18-2002, 2022 WL 15023450, at *7 (D. Del. Sept. 28, 2022) (granting estate's motion for partial summary judgment on estate's claim under § 2704(b) to recover death benefit proceeds); *Estate of Rink v. Vicof II Trust*, Civ. No. 20-39, 2021 WL 6064890, at *7 (W.D. N.C. Dec. 20, 2021) (denying cross-motions for summary judgment in an action brought by estate to recover proceeds on STOLI policy); *Estate of Malkin v. Wells Fargo Bank, N.A.*, Civ. No. 19-14689, 2022 WL 2285884, at *3 (11th Cir. June 23, 2022) (affirming judgment in favor of estate in § 2704(b) claim against policy owner and securities intermediary); *Estate of Hoefer v. ATC Realty Fifteen, Inc.*, Civ. No. 20-6698, 2021 WL 148087, at *3 (N.D. Cal. Jan. 15, 2021) (denying motion to dismiss estate's claim to recover death benefit under STOLI policy); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 409 (5th Cir. 2004) (awarding proceeds of corporate-owned life insurance policy that lacked insurable interest under Texas law to estate); *Lewis v. Wal-Mart Stores, Inc.*, Civ. No. 02-944, 2005 WL 3263377, at *7 (N.D. Okla Dec. 1, 2005) (finding estate of employee had standing to recover paid-out death benefit under a corporate-owned life insurance policy where employer had no insurable interest in life of insured); *Kramer v. Lockwood Pension Servs.*, 653 F. Supp. 2d 354, 375 (S.D.N.Y. 2009) (representative of estate had standing under declaratory judgment act to seek life insurance proceeds not yet paid to investors).

Plaintiffs are not suing merely to ensure compliance with regulatory law; instead, they seek to recover from Defendants the proceeds of illegal wagers on the Insureds' lives based on an alleged STOLI scheme in which Defendants were a party. Plaintiffs have set forth allegations of the STOLI scheme in which Defendants were involved, including allegations that Plaintiffs were induced into illegal wagering transactions, that the Insureds' private health information was used for purposes of illegal wagering, that the Insureds' and their families were repeatedly contacted with inquiries about whether an Insured had died, and that there is an ongoing impoverishment caused by Defendants' unlawful receipt and retention of the STOLI proceeds to which Plaintiffs are entitled. In short, Plaintiffs seek relief for injuries caused by human life wagering. This type of injury has historically been considered an injury warranting judicial relief. Further, the Delaware statute under which Plaintiffs bring this action—18 Del. C. § 2704(b)— codifies a private right of action based on law stemming from claims brought by insured's estates seeking to recover proceeds of policies that were procured without insurable interest. The Court finds that Plaintiffs' allegations suffice to establish an injury for purposes of standing because of the "close relationship" between the alleged harm and the harm that has been traditionally recognized. *See TransUnion*, 594 U.S. at 417. In addition, to the extent that Plaintiffs can prove their allegations that Defendants were involved in the scheme as Securities Intermediaries, it is conceivable that Plaintiffs' alleged injuries were caused by Defendants.

At this early stage of the litigation, the Court finds that the Complaint on its face sufficiently avers facts to confer subject matter jurisdiction. This ruling, however, makes

no intimation of the strength of Plaintiffs' claims on the merits.  That, of course, will be considered at a later date.

### CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Article III Standing Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. No. [57]) is respectfully **DENIED**.

Dated:  January 9, 2024            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge