## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Estate of Saul Offit, *by its Executor, Marc Offit*; Estate of Naomi Pressma, *by its Executor, Conrad Pressma*; Estate of Georgia Towers, *by its Executor, Edwin Towers*,<br><br>                Plaintiffs,<br><br>v.<br><br>U.S. Bank, N.A., *as Securities Intermediary*; and Wells Fargo Bank, N.A., *as Securities Intermediary*,<br><br>                Defendants. | Civil No. 23-45 (DWF/DJF)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

This matter is before the Court on the following motions for summary judgment: Defendant U.S. Bank National Association's ("U.S. Bank") motion for summary judgment on the claim filed by Plaintiff Estate of Naomi Pressma ("Pressma Estate") (Doc. No. 192); Plaintiffs Estate of Georgia Towers ("Towers Estate") and Estate of Saul Offit's ("Offit Estate") motion for summary judgment against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (Doc. No. 199);[1] U.S. Bank and Wells Fargo's motion for summary judgment on securities intermediary liability (Doc. No. 204); and Pressma

---

[1] On December 8, 2025, the Towers Estate and Wells Fargo informed the Court that they have come to an agreement to resolve the claims relating to the Towers Policy, and they requested that the Court suspend consideration of the present motions with respect to the dispute between the Towers Estate and Wells Fargo. Accordingly, the Court does not consider the pending motions insofar as they pertain to the Towers Estate.

Estate's motion for summary judgment against U.S. Bank (Doc. No. 209). For the reasons set forth below, the Court grants U.S. Bank and Wells Fargo's motion regarding securities intermediary liability as to the Offit and Pressma Estates, suspends consideration of the dispute between the Towers Estate and Wells Fargo, and denies the remaining motions as moot.

## BACKGROUND

In this action, the Offit, Pressma, and Towers Estates (collectively, the "Estates") seek to recover death benefit proceeds of certain life insurance policies on the lives of Mr. Offit, Ms. Pressma, and Ms. Towers (the "Insureds") because the policies were allegedly issued "without an insurable interest [and] as wagers on the Insureds' lives." (Doc. No. 1 ("Compl.") ¶ 86.) The respective Estates seek proceeds of one policy on each of the Insured (the "Policies"): (1) Offit Estate: $8.5 million proceeds of Hartford policy U01587685 (the "Offit Policy"); (2) Pressma Estate: $1.5 million proceeds of John Hancock Life Insurance Company policy UL1202887 (the "Pressma Policy"); and (3) Towers Estate: $5 million proceeds of American General Life Insurance Company policy U10033286L (the "Towers Policy").

The Estates allege that the Policies were stranger-originated life insurance ("STOLI") policies.[2] (*Id.* ¶ 1.) The Estates allege that the Insureds were victims of an

---

[2] A STOLI policy is created when a stranger (i.e., a group of investors) purchases a life insurance policy from an insured for a lump sum of money, after which the stranger-purchaser pays premiums and becomes the beneficiary. When an insured who sold their policy dies, the stranger-purchaser receives the death benefit. Sometimes a STOLI scheme is explained by referring to the insured as the stranger. *See, e.g., Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 56 (Del. 2022) ("In a [STOLI] scheme, a

2

illegal scheme organized by a family of related Delaware entities known generally as Coventry. (*Id.* ¶ 25.) According to the Estates, Coventry operated a STOLI program that generated large numbers of multi-million-dollar policies, including the Policies here, and after the Insureds passed away, the proceeds of the Policies were paid by the life insurers to Defendants, as owners and beneficiaries of the Policies as "securities intermediaries." (*Id.* ¶¶ 4, 25, 30.)

Specifically, in 2001, Coventry and U.S. Bank entered into an "Origination Agreement" whereby Coventry manufactured life insurance policies on the lives of senior citizens for sale. (Doc. No. 214 ¶ 3, Ex. 1.) In 2008, Wells Fargo entered into a nearly identical Origination Agreement with AIG Life Settlement LLC and Coventry. (Doc. No. 203-1.) Pursuant to this agreement, AIG was "Purchaser," Coventry was "Originator and Seller," and Wells Fargo was "Fiscal Agent." (*Id.* at 2.) The Origination Agreement obligated Coventry to create and sell, and AIG to buy, policies Coventry originated. (*Id.* at 6.) In 2003 and 2004, Coventry and AIG developed the Premium Finance Plus ("PFP") Program, aimed at generating STOLI policies at scale. (Doc. No. 217-1 at 2-6; Doc. No. 217-2 at 4.)

---

speculator contrives to purchase a policy on the life of a stranger. If the stranger dies before the value of the premiums paid by the speculator exceeds the death benefit of the policy, the speculator's bet pays off."). With a STOLI policy, there is no connection between the insured and the stranger-purchaser (policyholder). STOLI policies are illegal in some states because they violate the principle of insurable interest, which requires that there be an insurable interest, or a connection, between the policyholder, the insured, and the beneficiary.

3

The Insureds applied for the Policies in 2005 and 2006 and then sold them in 2007 and 2008. (Doc. Nos. 196-1, 202-38, 203-8.) After the sales, the Policies became financial instruments that were bought and sold. While the beneficial owners of the Policies changed, the Policies remained in force because the respective owners continued to pay all required premiums. At the time the Policies matured, the beneficial owners of the Policies (the "Beneficial Owners") were two institutional investment funds: Financial Credit Investment III SPV-B (Cayman), L.P. ("FCI III") was the Beneficial Owner of the Offit and Pressma Policies; and Financial Credit Investment II Trust E ("FCI II") was the Beneficial Owner of the Towers Policy; and upon maturity, FCI II and FCI III sold the Policies to Coventry and another investor. (*See, e.g.*, Doc. No. 202-45 (Offit Trust); Doc. No. 202-49 (Tower Trusts); Doc. No. 214-23 (Pressma Trust).)

Wells Fargo was the securities intermediary for the Offit Policy and U.S. Bank was the securities intermediary for the Pressma Policy. Defendants' roles as securities intermediaries were governed by contract (the "SAAs"):

**Offit Policy:** A Securities Account and Custodian Agreement governed Wells Fargo's role as securities intermediary for FCI III (Doc. No. 212-4 ("WF-FCI III SAA")); and

**Pressma Policy:** A Securities Account Agreement governed U.S. Bank's role as securities intermediary for FCI III (Doc. No. 213-1 ("U.S. Bank-FCI III SAA").)

The substantive terms of each SAA are identical:

- Wells Fargo/U.S. Bank are "securities intermediaries" as defined in Section 8-102(a)(14) of the Uniform Commercial Code. (*See* WF-FCI III SAA § 7(a)(iv); U.S. Bank-FCI III SAA § 5(a)(iv).)

4

- Wells Fargo/U.S. Bank will establish a "Securities Account" in the name of the applicable Beneficial Owner. (*See* WF-FCI III SAA § 2(a); and U.S. Bank-FCI III SAA § 2(a).)

- The Securities Accounts will hold "Financial Assets," within the meaning of Section 8-102(a)(9) of the UCC,[3] consisting of life insurance policies and the proceeds of such policies. (*See* WF-FCI III SAA § 2(b); and U.S. Bank-FCI III SAA § 2(b).)

- All property credited to the Securities Account is identified on the books and records of the Bank as being owned exclusively by the applicable Beneficial Owner and is held by the Securities Intermediary as a custodian in safekeeping for the Beneficial Owner separate and apart from the Securities Intermediary's own assets and from the assets of the Bank's other customers. (*See* WF-FCI III SAA § 2(a); and U.S. Bank-FCI III SAA § 2(c).)

- Financial assets can be deposited to, and withdrawn from, the Securities Account by the Beneficial Owner's submission of an Entitlement Order. (*See* WF-FCI III SAA § 2(a); and U.S. Bank-FCI III SAA § 2(a).)

- Within three business days of the Securities Intermediary's receipt of policy proceeds from an Insurer, the Securities Intermediary will deposit the proceeds into an account designated by the Beneficial Owner. (*See* WF-FCI III SAA § 2(a); and U.S. Bank-FCI III SAA § 2(c).)

The Insureds passed away at separate times from 2018 to 2021. Wells Fargo and U.S. Bank submitted claims to each of the life insurers, seeking payment of the proceeds, or death benefits, of each Policy. (Doc. Nos. 212-8, 212-9, 213-2.) The life insurers paid the claims, with interest, to Defendants in their capacities as securities intermediaries. (Doc. Nos. 212-10, 212-11, 213-3.) Upon receipt or very shortly thereafter, Defendants

---

[3] The SAAs provide that all references to the Uniform Commercial Code ("UCC") "means the [UCC] as from time to time in effect in the State of New York." (*See* WF-FCI III SAA at 32; and U.S. Bank-FCI III SAA at 23.)

deposited the checks into the accounts owned and controlled by each Policy's respective Beneficial Owner as follows:  (1) on October 26, 2018, U.S. Bank deposited the $1,502,920.29 in proceeds of the Pressma Policy into an account belonging to FCI III (Doc. No. 213-4; *see* Doc. No. 212-7 at 55, 161); and (2) on January 5, 2021, Wells Fargo deposited the $8,519,095.89 in proceeds of the Offit Policy into an account belonging to FCI III (Doc. No. 212-12 at 7; *see* Doc. No. 212-6 at 89-91).  Defendants did not, and were not permitted to, retain any of the Policy Proceeds and did not account for the Policy Proceeds as income.  (Doc. No. 212-6 at 154-55; Doc. No. 212-7 at 161-62.)

In January 2023, the Estates brought this lawsuit to recover insurance proceeds due to lack of insurable interest under Delaware law.  Plaintiffs allege that the Policies are illegal under Delaware's common law and insurable interest statute, Del. Code Ann. tit. 18, § 2704(b).  The parties have filed cross-motions for summary judgment.  The Court starts and ends with Defendants' motion for summary judgment on securities intermediary liability.

### DISCUSSION

**I.     Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  The Court will consider the cross-motions

drawing inferences against each movant as warranted. *See, e.g.*, *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation modified).

## II.    Securities Intermediary Liability Under Section 2704(b)

The Estates bring this action under title 18, section 2704(b) of the Delaware Code. That statute permits estates to "maintain an action" against the "beneficiary, assignee or other payee" who "receives from the insurer any benefits" of a life insurance policy "made in violation of" section 2704. Del. Code Ann. tit. 18, § 2704(b). The Estates seek the life insurance proceeds that were paid out after the deaths of the Insureds. These proceeds were first paid to Wells Fargo and U.S. Bank, as securities intermediaries, who in turn deposited the proceeds into the accounts of the Beneficial Owner—the FCI III Trust.

U.S. Bank and Wells Fargo are securities intermediaries and have been sued in that capacity. (Compl. ¶¶ 15-16, 34, 74-75.) A securities intermediary is "a person, including a bank or broker, that in the ordinary course of its business maintains securities

accounts for others and is acting in that capacity." U.C.C. § 8-102(a)(14)(ii).  A securities intermediary nominally holds financial assets on behalf of a customer, the assets' beneficial owner, who becomes an "entitlement holder." *Id.* § 8-102(a)(7), (9); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-cv-740, 2022 WL 3018104, at *3 (S.D.N.Y. July 29, 2022) (describing securities intermediary holding policy account as purely ministerial); *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 674 F. Supp. 3d 532, 540 (S.D. Iowa 2023) (referring to securities intermediary as "nominal owner").  This "ministerial" or "nominal" role of the securities intermediary is also described in the U.C.C.— referring to securities intermediaries as the "conduits" in the indirect holding system.  *See* U.C.C. § 8-115 cmts. 1, 5.[4]  A financial asset is an "obligation . . . which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a medium for investment," and includes "any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this Article." *Id.* § 8-102(a)(9)(ii)-(iii).

---

[4]     A "conduit" refers to "a natural or artificial channel through with something . . . is conveyed." *Conduit*, Merriam-Webster, https://www.merriam-webster.com/dictionary/conduit (last visited Dec. 1, 2025).  "Conduit" has also been used to describe those who cannot be held liable under section 550 of the Bankruptcy Code. *See Leonard v. First Com. Mortg. Co. (In re Cir. All., Inc.)*, 228 B.R. 225, 233 (Bankr. D. Minn. 1988) ("Generally, 'mere conduits' hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest.").

Thus, a securities intermediary acting in its traditional ministerial or nominal role does not receive a benefit from an insurer as required by section 2704(b). It serves only as a conduit through which the beneficial owner receives the benefit. For a securities intermediary to be liable under section 2704(b), a plaintiff must show something more, like that the securities intermediary had a possessory interest in the policy proceeds.

The SAAs demonstrate that Defendants held the proceeds in a purely ministerial or nominal capacity. The Policy Proceeds at issue in this case are "financial assets," and U.S. Bank and Wells Fargo held the Policy Proceeds for and credited the Policy Proceeds to the securities accounts belonging to their respective customers, the Beneficial Owner of the Policy Proceeds. The Beneficial Owner was the ultimate beneficiary of the Policies and the recipient of the Policy Proceeds. Importantly, financial assets held by a securities intermediary are not the property of the securities intermediary. *See* U.C.C. § 8-503(a). This fact is reflected in the SAAs in this case:

> *Properties in the Securities Account.* All property credited to the Securities Account (including all cash and any property underlying a "financial asset") shall be at all times (i) registered in the name of Wells Fargo Bank, N.A., as securities intermediary, (ii) *identified on the books and records of the Bank as being owned exclusively by Purchaser* (*and not by the Securities Intermediary*, the Bank or any of the Bank's other customers) and (iii) held by the Securities Intermediary as a custodian in safekeeping for Purchaser separate and apart from the Bank's own assets and from the assets of the Bank's other customers . . . .

(WF-FCI III SAA § 2a (second and third emphasis added); *see also* USB-FCI III SAA § 2(c) (containing similar language).)

The Estates have not pointed to any record evidence that would create an issue of fact showing that U.S. Bank or Wells Fargo, as securities intermediaries, performed any

9

function beyond a limited, ministerial role. Defendants never held any possessory interest in the Policy Proceeds; instead, Defendants received the checks and promptly deposited the Policy Proceeds into the Beneficial Owner's accounts. Indeed, the checks were made payable to Defendants as securities intermediaries, and Defendants did not "receive" any "benefits" from the Policies. Thus, there simply are no proceeds or benefits that the Estates could recover from these Defendants under section 2704(b). At most, the record shows that the securities intermediaries maintained a "fleeting" possession of the Policy Proceeds. But any such "fleeting" possession of the assets did not make the assets the property of the securities intermediaries. *See, e.g.*, *COR Clearing, LLC v. Calissio Res. Grp., Inc.*, 918 F.3d 579, 585 (8th Cir. 2019).

Because the Offit and Pressma Estates have not pointed to any record evidence that Defendants, as securities intermediaries, performed any function beyond a limited, ministerial role, those estates cannot establish that Defendants received any benefits of a life insurance policy. Accordingly, U.S. Bank and Wells Fargo are entitled to summary judgment on the claims made by the Estates of Offit and Pressma.[5]

The Estates rely on the *Malkin* case to argue that the Delaware Supreme Court rejected the "ministerial role" argument that Defendants make in this case. The Court disagrees. There, the plaintiff estates sought life insurance proceeds under section 2704(b) and sued both the securities intermediaries and the beneficial owners. *Estate of Malkin v. Wells Fargo Bank, N.A.* (*Malkin I*), 379 F. Supp. 3d 1263, 1270 (S.D. Fla.

---

[5] The Court does not consider alternative arguments for summary judgment.

2019), *aff'd in part, vacated in part*, No. 19-14689, 2022 WL 2285884 (11th Cir. June 23, 2022). The district court explained that a securities intermediary *could* be a "payee" under the statute *if* it retained any of the proceeds for itself but also stated that "[t]o the extent that [the securities intermediary], after receiving the Policy proceeds, merely passed them on in full to [the beneficial owner], [the securities intermediary] would appear to have no liability under [section 2704(b)]." *Id.* at 1279-80.

On appeal, the Eleventh Circuit certified two questions to the Delaware Supreme Court. *See Wells Fargo Bank, N.A. v. Estate of Malkin* (*Malkin II*), 278 A.3d 53, 56-57 (Del. 2022). The question of whether a securities intermediary is a "payee" under section 2704(b) was not before the Delaware Supreme Court.[6] And in that order, the Delaware Supreme Court agreed with the conclusion that securities intermediaries are protected by basic legal principles that protect conduits. In particular, after holding that U.C.C. § 8-115 does not apply to an estate's claim under section 2704(b), the Delaware Supreme Court continued:

> That does not mean, however, that a securities intermediary will ultimately be liable to pay an estate under Section 2704(b). As the District Court observed, "[t]o the extent that Wells Fargo, after receiving the Policy proceeds, merely passed them on in full to Berkshire, Wells Fargo would appear to have no liability. . . . Hence, a securities intermediary who merely acts on the instructions of the beneficial owner of a STOLI policy and credits the policy proceeds to the beneficial owner's account is unlikely to face ultimate liability under Section 2704(b). Instead, it will generally find protection from sources other than Section 8-115, such as general principles of agency law or its contract with its customer, the beneficial owner of the policy.

---

[6] The certified questions focused on whether defendants in a section 2704(b) action can assert certain specific defenses or counterclaims.

*Id.* at 67 (first alteration in original) (quoting *Malkin I*, 379 F. Supp. 3d at 1279).[7] The Delaware Supreme Court recognized that the comment section of U.C.C. § 8-115 states that "the policy of this section is similar to that of many other rules of law that protect agents and bailees from liability as innocent converters and that general tort law protects agents or bailees who act on the instructions of their principals or bailors." *Id.* (citation modified); *see also Daher v. LSH Co.*, Civ. No. 21-3239, 2024 WL 3571642, at *3 (C.D. Cal. July 23, 2024), ("In [*Malkin II*], the Delaware Supreme Court held that, *inter alia*, when a securities intermediary passes along 100% of a STOLI policy's death benefit to another party, the intermediary cannot be deemed a payee."), *appeal filed*, No. 24-5231 (9th Cir. Aug. 26, 2024).

The reasoning in *Malkin II* supports the Court's conclusion here that a securities intermediary who performs a limited, ministerial role in passing along 100 percent of the policy proceeds to the beneficial owner and who, therefore, does not have a possessory interest in the policy proceeds, is not liable under section 2704(b).

## CONCLUSION

For the reasons discussed above, the Court grants U.S. Bank and Wells Fargo's motion for summary judgment on securities intermediary liability as to the Offit and Pressma Estates. Neither U.S. Bank nor Wells Fargo, as securities intermediaries, can be

---

[7] Defendants argue, in the alternative, that U.C.C. § 8-115 protects them as securities intermediaries from "adverse claims" to financial assets they hold on behalf of their customers. The Estates argue that in *Malkin II*, the Delaware Supreme Court rejected that argument. Because the Court's decision is not based on that argument, the Court need not reach this issue.

held liable for the claims pending in this action. Therefore, U.S. Bank and Wells Fargo are entitled to summary judgment on the Offit and Pressma Estates' claims against them and those claims are dismissed with prejudice. Based on an agreement between Wells Fargo and the Towers' Estate, the Court suspends consideration of this dispute solely with respect to the Towers Estate. The remaining motions for summary judgment are denied as moot.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants U.S. Bank and Wells Fargo's motion for summary judgment on securities intermediary liability (Doc. No. [204]) is **GRANTED** insofar as it relates to the Offit and Pressma Estates.

2. Defendant U.S. Bank's motion for summary judgment on the claim filed by Plaintiff Estate of Naomi Pressma (Doc. No. [192]); Plaintiff Estate of Saul Offit's motion for summary judgment against Defendant Wells Fargo (Doc. No. [199]); and Plaintiff Estate of Naomi Pressma's motion for summary judgment against U.S. Bank (Doc. No. [209]) are **DENIED AS MOOT**.

3. The Court **SUSPENDS** consideration of the dispute insofar as it relates to the Towers Estate.

4. Defendants U.S. Bank and Wells Fargo are entitled to judgment on Plaintiff Offit and Pressma Estates' claims and those claims (Doc. No. [1]) are **DISMISSED WITH PREJUDICE**.

Dated:  December 15, 2025              s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge